

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*James G. O'Donohue III*
*Assistant United States Attorney*
*James.O'Donohue@usdoj.gov*

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4985
MAIN: 410-209-4800

July 25, 2025

The Honorable Matthew J. Maddox
United States District Judge
United States District Court for the District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

      Re:    <u>United States v. Khalil Dunaway</u>
                Criminal No. MJM-24-208

Dear Judge Maddox:

      I am writing to state the government's sentencing recommendation in the above-referenced case. For the reasons discussed below, the government respectfully requests that the Court sentence the defendant to a sentence of 151 months' incarceration, which is a significant period of incarceration but the bottom of the United States Sentencing Guidelines (U.S.S.G.) for this case. It is also the sentence recommended by the United States Probation Office. PSR at 26.

## Sentencing Procedure

      In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court set forth a multi-step process for imposing sentence in a criminal case. *Id*. at 51-52. A sentencing court should begin by correctly calculating the applicable guidelines range. *Id*. at 49. After providing the parties with an opportunity to present arguments, the district court should then consider the factors set forth in 18 U.S.C. § 3553(a). *Id*. at 49-50; *see also United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011).

## Sentencing Guidelines Calculation

      The defendant pled guilty to count one of the indictment, Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). This count carries with it a minimum sentence of 10 years in prison and a maximum of lifetime imprisonment.

      The base offense level is **30** pursuant to U.S.S.G. § 2D1.1(c)(5) to reflect the total quantity of fentanyl (1032 grams) and cocaine (1418 grams) possessed by the defendant with intent to distribute.

An additional **2 levels** are added because the defendant possessed a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1). An additional **2 levels** are added because the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, pursuant to U.S.S.G. § 2D1.1(b)(12). The defendant therefore has an adjusted offense level of **34**.

The defendant accepted responsibility for his misconduct and, accordingly, the government does not oppose a 2-level reduction in the defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a). The government also agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the defendant's timely notification of the defendant's intention to enter a plea of guilty. Therefore, the adjusted offense level is **31**.

The government agrees with the PSR that the defendant has 9 criminal history points, which makes his criminal history category **IV**. PSR ¶¶ 37-39.

With an adjusted offense level of **31** and criminal history category of **IV**, the defendant's sentencing guideline range is **151-188** months imprisonment.

As explained in more detail below, the government believes that a sentence of 151 months imprisonment, which is at the bottom of the guidelines range, is sufficient, but not greater than necessary, to serve the goals of 18 U.S.C. § 3553(a).

**Factors Set Forth in 18 U.S.C. § 3553(a)**

Under § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The government believes the following 3553(a) factors are most relevant in this case:

I.    Nature and Circumstances of the Offense (3553)(a)(1))

This case presents an extremely serious nature and set of circumstances: a situation in which the defendant possessed more than a kilogram of fentanyl and a kilogram of cocaine with an arsenal of weapons to protect his drugs. The defendant, who had a Ring security camera pointing into his residence and his stash house, packaged his drugs for distribution while wearing a respirator for his own protection while disregarding the danger his "business" has on the population of Baltimore County and the surrounding areas.

In November 2023, Baltimore County Police Department investigators observed the defendant engage in multiple hand-to-hand suspected drugs transactions in Baltimore County, Maryland. Based on physical and electronic surveillance, investigators determined that the defendant was living at 427 Colindale Street in Middle River, Maryland because he regularly spent the nights there. However, he would regularly spend the daytime hours at 10 Estates Court, Apartment 5107 in Pikesville, Maryland before returning home to 427 Colindale. As a result, investigators concluded he was using the 10 Estates Court apartment as a stash house. They were

2

correct in that conclusion. On December 18, 2023, investigators executed a search warrant at the 10 Estates Court apartment and recovered the following:

- Approximately 969 grams of fentanyl packaged for distribution;
- Approximately 1273 grams of cocaine, some of it packaged for distribution;
- A Smith & Wesson .40 caliber pistol bearing serial number HYD8629;
- A Taurus Ultra-Light .38 caliber pistol bearing serial number AAL028421;
- A Camouflage AR-15 style ghost gun rifle bearing no serial number;
- A Glock switch;
- Miscellaneous firearm magazines and ammunition;
- Sifters, respirators, and goggles used for packaging controlled substances for distribution;
- Digital scales and drug paraphernalia;
- 3 backpacks containing kilo presses; and
- Various cutting agents used for packaging controlled substances for distribution.

The defendant did not limit his drug distribution business to his stash house, however; he brought his "work" home with him. Also on December 18, 2023, investigators recovered the following at his 427 Colindale Street residence:

- Approximately 63 grams of fentanyl;
- Approximately 145 grams of cocaine;
- A Glock 33 .357 caliber pistol bearing serial number BUKS970;
- A Glock 21 .45 caliber pistol bearing serial number BEM630 (this firearm was reported stolen from Georgia);
- A Smith & Wesson .40 caliber pistol bearing serial number JCN4094;
- A Rossi .22 caliber revolver bearing serial number 549149 loaded with 7 rounds of ammunition;
- A Pistol brace;
- Miscellaneous firearm magazines and ammunition;
- A plate and scale with controlled substance residue, used for packaging controlled substances for distribution;
- Assorted jewelry, silver ingots, and watches with a total fair market value of approximately $63,128;
- Approximately $32,042 in U.S. currency; and
- Multiple phones.

In his vehicle, he also had suboxone strips, additional phones, more drugs, and a digital scale. Between his two residences and vehicle, the defendant had more than a kilogram of fentanyl; more than 1400 grams of cocaine; five pistols; a revolver; an AR-15 style ghost gun; a machine gun conversion device; and numerous other firearm parts and items related to packaging drugs for distribution.

The deleterious impact of drugs—particularly fentanyl—on the Baltimore area has been well documented. According to the Drug Enforcement Administration (DEA), just 2 milligrams of fentanyl can be lethal depending on a person's body size, tolerance, and past usage. *Facts About Fentanyl*, United States Drug Enforcement Administration, https://www.dea.gov/resources/facts-about-fentanyl. This means that just the fentanyl recovered during the December 18, 2023 search was enough to kill a significant number of people. Baltimore, in particular, has been hard hit by the opioid crisis that has been driven by the proliferation of illicit fentanyl. As the Baltimore Banner originally reported, "[t]he fatal overdose death rate in Baltimore from 2018 to 2022 was nearly double that of any other large city and higher than all of Appalachia during the prescription pill crisis." Alissa Zhu, Nick Thieme, and Jessica Gallagher, *Almost 6,000 Dead in 6 Years: How Baltimore Became the U.S. Overdose Capital*, The Baltimore Banner, Re-printed in The New York Times (Jun. 7, 2024), https://www.nytimes.com/2024/05/23/us/baltimore-opioid-epidemic-od-deaths.html. The article continued, "[t]he death rate remained relatively low until the mid-2010s, when fentanyl flooded illegal drug markets across the country." *Id.*

Through his actions, the defendant made clear that he was willing to enrich himself at the expense of those around him. His actions were extremely serious and weigh in favor of a lengthy prison sentence.

II.     History and Characteristics of the Offender (3553(a)(1))

The defendant's actions appear even more shocking, however, when taken in the context of his criminal history. The defendant's history dates back to when he was a juvenile with adjudications for assault, robbery, and drug possession. PSR ¶¶ 32-35. In 2018, he was convicted of his first offense as an adult—distribution of a controlled dangerous substance (CDS), for which he was sentenced to 20 years prison with 17 years suspended. PSR ¶ 37. Later in 2018, the defendant was again convicted of a drug trafficking crime, but this conviction involved a firearm. PSR ¶ 38. In that case, he possessed a rifle in connection with a drug trafficking offense and was sentenced to 12 years prison with 6 years suspended. Finally, he was convicted in 2018 of another drug distribution offense and sentenced to 7 years prison with 4 years suspended. PSR ¶ 39. Notably, the drug distributed by the defendant in this last conviction was fentanyl. *Id.* Between these convictions, it is clear that the defendant refuses to stop selling drugs. Moreover, he has amassed a significant number of firearms to protect his increasingly voluminous stash of drugs.

The government would remiss, though, if it did not recognize that the defendant does present some mitigating characteristics. His parents are both recovering addicts, and he witnessed domestic violence while growing up. PSR ¶¶ 56-57. He has also suffered from depression and anxiety since he was a child. PSR ¶ 64. The defendant has battled his own substance abuse challenges, including opioids and "lean" (although this also serves to underscore how the defendant should know first-hand the dangers of drugs). PSR ¶¶ 69-70. For these reasons, the government believes that a sentence at the highest end of the sentencing guidelines is not necessary to achieve the goals of 18 U.S.C. § 3553.

III. <u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant (3553(a)(2))</u>

A sentence of 151 months incarceration is appropriate under the circumstances to provide just punishment and adequately protect the public while balancing the factors described above. The defendant's actions here were brazen and serious, and his prior sentences of incarceration did not adequately deter him from continuing his drug distribution activities. Much to the contrary, they seem to have emboldened him. At the same time, the Court must hand down a sentence that deters society more generally from engaging in dangerous drug distribution, especially when such drug activity is combined with illegal firearm possession.

To avoid unwarranted disparities with other similarly situated defendants, the U.S. Sentencing Commission provides data on defendants with similar sentencing guidelines and criminal history. Here, the data indicates that over the past five fiscal years, the average length of imprisonment for similarly situated defendants was 127 months and median length of imprisonment was 137 months. However, there were several exacerbating factors here, namely the defendant's large stockpile of seven firearms and machine gun conversion devices, that merit this case to result in a higher sentence than the average and median, albeit still the bottom of the guidelines.

For all these reasons, a sentence of 151 months is the sentence that is sufficient, but not greater than necessary, to achieve the goals of 18 U.S.C. § 3553(a). The government thanks the Court for its consideration of this matter.

            Respectfully submitted,

            Kelly O. Hayes
            United States Attorney

            _____/s/_____
      By: James G. O'Donohue III
            Assistant United States Attorney

cc: Matthew Zernhelt, Esq.
   Helen Domico, USPO